CANAL BANK
ET AL.
*vs.*
COPELAND.

*A. N. Ogden,* contra.

---

CANAL BANK ET AL. *vs.* COPELAND.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-
ORLEANS.

Where a creditor demands the execution of a judgment, rendered by a
tribunal different from *that* within whose jurisdiction the execution of it
is sought, he may resort to the executory process ; but this process
cannot issue from a court within the same territorial jurisdiction.  The
party must resort to his *fieri facias* on his judgment.

So, where a judgment was rendered by the court of the first judicial district
and its execution sought, by resorting to the *executory process* in the
Parish Court of New-Orleans, *held,* that the Parish Court was without
power to grant the order of seizure, as *it* and the District Court possessed
precisely the same jurisdiction, within the same territorial limits.

This case comes up on a monition taken out of the Parish
Court for the parish of New-Orleans, by John M'Donough,
to perfect a sale of a certain tract of land sold by the plain-
tiffs, under an order of seizure and sale against the defend-

ant, at which he (M'Donough) became the purchaser. See the case in 9 *Louisiana Reports*, 308.

EASTERN DIST.
*March*, 1838.

CANAL BANK
ET AL.
*vs.*
COPELAND.

The defendant made opposition to the monition, and the Canal Bank and others were called in warranty to defend and support the purchaser's title. The case turned upon the legality of the sale.

The facts of the case are, that the plaintiffs, in 1833, caused to be sold at auction a certain tract of land, and the defendant became the purchaser. He was sued in the District Court for the first judicial district of the state of Louisiana, on the first instalment, and judgment rendered, liquidating the whole debt. This judgment was rendered final by a decision of the Supreme Court.

After all these proceedings were had, the plaintiffs applied to the Parish Court of Orleans, having concurrent jurisdiction with the District Court, for an order of seizure and sale on this judgment against Copeland. He made an ineffectual attempt to resist the proceeding and appealed. But in the meantime the property in question was seized and sold, and John M'Donough became the purchaser. See the two first cases in 6 *Louisiana Reports*, 584, *and* 8 *Ibid.*, 577.

The Parish Court gave judgment sustaining the sale, and overruling the opposition to the monition, from which the defendant appealed.

*Grymes, Lockett* and *Slidell*, for the plaintiffs and J. M'Donough.

1. In this case, the demand against the defendant for the original purchase, was duly liquidated by the judgment of the District Court, which has become *res judicata*. This judgment settled, finally, all the rights of the original parties, and was irrevocable.

2. The Parish Court which granted the order of seizure and sale, under which M'Donough purchased, being a different tribunal from that in which the original judgment was obtained, only ordered its execution as is required by law. It had jurisdiction of the matter. *Code of Practice, articles* 732, 746.

EASTERN DIST.
March, 1838.
———————
CANAL BANK
ET AL.
vs.
COPELAND.

3. The defendant pleaded specially to the jurisdiction of the Parish Court, and joined issue on the fact that the land was situated out of the jurisdiction of the court. This issue depended on a fact which failed him, and he must be considered as having waived the jurisdiction as to every other matter. The article 94 of the code, contemplates suits instituted in two courts of concurrent jurisdiction, which may be waived by the parties, and which was waived by the defendant in this case.

4. The court, on hearing the evidence, decided it had jurisdiction on the ground pleaded. By joining issue on this ground alone, the defendant waived any other objections or exceptions he might have pleaded under articles 94 and 335 of the Code of Practice. He is required to file his exceptions, otherwise he waives them, and, consequently, his rule taken in the Parish Court to have the suit dismissed for want of jurisdiction, and which was overruled, has become *res judicata*, and precludes every other exception.

5. M'Donough purchased under the order of seizure and sale, and after the rule questioning the jurisdiction of the Parish Court, was rejected; and, therefore, his title is good, as against Copeland.

6. Any irregularities as to the appraisement under the article 673 of the Code of Practice, are waived by the defendant's *joining in appraisement*. The article is merely directory, as to the manner the appraisers are to make the appraisement.

7. The defendant was duly notified, attended the sale, and encouraged bidders. He knew well the property that was described in the notice of sale, and that it was the identical property he purchased from the plaintiffs. He cannot plead ignorance, or that there was error or fraud in making the sale.

8. The act of 1834, in relation to monitions to assure sales, never contemplated such proceedings as these. One object, as it says, was to protect purchasers from eviction; and eviction means a suit by a third person, not the defendant or party to the sale. The only question under the monition is,

was the sale made contrary to law, or not? As regards Copeland, all the requisites of the law in making the sale, were complied with. He cannot, therefore, sustain this opposition.

*Hennen, Barton* and *Mazureau,* for the defendant.

1. The misdescriptions of the property in the advertisements and appraisements, rendered the sale to M'Donough by the sheriff, void. *Dufour* vs. *Camfranc,* 11 *Martin,* 610. *Ibid., same case,* 675. 7 *Martin, N. S.,* 155. 8 *Ibid.,* 246. 3 *Louisiana Reports,* 421. 4 *Ibid.,* 207. 6 *Ibid.,* 49. *M'Donough* vs. *Gravier,* 9 *Louisiana Reports,* 308. *Code of Practice,* 673.

2. The order of seizure and sale was awarded by a court not of *competent jurisdiction.*

The District and Parish Courts of New-Orleans, being courts of concurrent jurisdiction *quo ad* the *subject matter* in contestation, and the District Court being first seized of the suit, *ousted* the jurisdiction of the Parish Court; and jurisdiction once vested, cannot be taken away by the act of either of the parties. 1 *Martin, N. S.,* 299.

A judgment rendered by the District Court, can only be enforced in the *curtilage,* of its jurisdiction, in the very parish where the court sits, by the court itself, and not by the Parish Court. The article 746 of the Code of Practice, contemplates not merely a *different tribunal,* but a tribunal in a *different jurisdiction;* nor could *either court* award *executory process,* on a judgment rendered by *either.*

Nor could either award executory process, on the ground of an act importing *confession of judgment,* for here there was no such act. See *Code of Practice, articles* 732–3. There was no mortgage, *conventional, legal* or *judicial;* a conventional mortgage *was* to have been given, but was not; hence it only existed in *faculty in posse,* and not *in esse,* etc. Without such an act, it is past a doubt that the District Court was without power to issue such process; and to establish, that of two courts of concurrent jurisdiction, one of them is without the power, conclusively establishes that the other is without it.

EASTERN DIST.
March, 1838.

CANAL BANK
ET AL.
vs.
COPELAND.

In the adjudication of this property from the Canal Bank et al. to Copeland, the price was to be paid in five instalments. The two first were to be secured by endorsed notes; the other three by special mortgage on the property. No act of sale was in fact passed. But if we construe that to have been done, which was contracted to have been done, yet there was no mortgage on the property to secure the second instalment. Copeland had as full right of contestation before judgment was rendered upon that instalment, as he had upon the first instalment; and yet the order of seizure and sale is against the *whole* of the property, for *all* the instalments, due and *not due*, secured by mortgage and not secured by mortgage. See *Code of Practice*, 545.

But in this very case, this very order of seizure and sale has been set aside by this court as a nullity. See 8 *Louisiana Reports*, 577. But it is argued that this does not vacate the sale under the order of seizure and sale, made by the sheriff pending the proceedings, and the case of Poultney's Heirs *vs.* Cecil's Executor, 8 Louisiana Reports, 424, is cited, to show that the reversal of a judgment, even for want of jurisdiction, does not affect a purchaser's rights under a sheriff's sale. That case leans, for its support, *entirely* on the case of Ballio et al. *vs.* Wilson et al., 5 Martin, N. S., 214, and *that case decided no such point*, nor was the cause there reversed for *want of jurisdiction*. And had that case been decided in that way, it would stand in opposition to the whole retinue and current of authorities, and to show this, reference is made to all the authorities cited under our first point.

It may well be doubted at this day, under the operation of subsequent modifying legislation, whether the reversal of a judgment for any cause, does not vacate the sale made under its authority. See *Code of Practice, article* 400. In *terms* it relates to *third* persons, in *principle* it relates to *every body*.

3. No remedy existed against the illegal issuance of the order of seizure and sale by the parish judge, save a rule to set that order aside.

If any other remedy existed, it must have been either an
injunction or an appeal.

It is clear that an injunction did not lie.   The case could
not have been brought within the scope of any one of the specifications set forth in the code of procedure.  See *Code of Practice*, 739.

As to appeals, they only lie on final judgments or interlocutory judgments, which work an irreparable injury.  See *Code of Practice, articles 565–6*.   Was the order of the seizure and sale either ?   Is it a judgment at all ?

In some sense, perhaps, all orders of courts are judgments. They decide the point in hand, and in loose parlance may be said to adjudge it.   But will they bear that meaning under. the accurate test of judicial language ?

If such an order be a judgment, it is curious why it should be called an order, and this throughout the whole code of procedure, and precisely in the same sense, and with that special aptness of phrase, with which it speaks of orders of provisional seizure, orders of sequestration, orders of injunction, all of which, like orders of seizure and sale, are grantable and granted at chambers ; and is there any judgment of any court which can be rendered there ?

The error seems to result from confounding the judges with their courts, the officer with the tribunal.

Judges award orders ; courts pronounce judgments.  Orders may come from chambers ; judgments must come from the bench, and in open court.

But an order of seizure and sale is unlike a judgment in other respects.   It is without reasons for its rendition.   While this keeps it good as an order, it annuls it as a judgment.

Again : orders of seizure and sale are signed when they are awarded ; take effect from the moment of signature. But three days must elapse between awarding a judgment and the signing of it.   This delay is the *locus penitentiæ*, when motions for a new trial, or to arrest the judgment are. to be made, and has therefore no application, nor is ever applied to orders of seizure and sale ; for as the proceeding is *ex parte* and at chambers, the party whose interests are at

EASTERN DIST.
March, 1838.

CANAL BANK
ET AL.
vs.
COPELAND.

stake, having no notice or knowledge thereof, could not employ the *locus penitentiæ* in averting the effects.

True, there is one case which seems to treat an order of seizure and sale as a judgment; but this was prior to the Code¹ of Practice, and wholly conflicts with its provisions. By that code it will be seen, that these orders are devoid of the vital distinguishing characteristics of a judgment. See *articles* 538, 539, 540, 543, 546, 547, 548. 6 *Louisiana Reports*, 69.

An order of seizure and sale first comes to the knowledge of the defendant, with the judge's signature already affixed to it, and the authorities referred to conclusively establish, that if it was a judgment, the very signing of it takes away the judge's power over it. No such definitive results appertain to orders. They are open to rules, to rescind, to revoke and set them aside, and when the court *a quo* erroneously discharges a rule so taken, this court corrects that error, and makes the rule absolute. This it has done at a former hearing of this very case.

The very notice of the order to the defendant, after its issuance, challenges his objections to its regularity, and if he has valid ones, he has a right to have them sustained. If then the right of contestation exists, can the right of appeal co-exist, or be exercised, until that contestation has terminated in a final judgment?

The moment it is permitted to a party to contest the validity of the order, *eo instanti*, that contest becomes a case between parties in court, and the right of appeal exists only in abeyance in faculty, until that case is closed by a final judgment; and here, the sheriff's sale to M'Donough was made five days before that final judgment on the rule was signed by the judge. *Code of Practice*, 547-8. 6 *Louisiana Reports*, 69.

It results then, that the order of seizure and sale was not a final judgment, and hence not appealable from as such. If it was a judgment at all, it was interlocutory, and appealable only as such, if it worked an irreparable injury.

This is readily tested. An appeal is brought here on the order itself. This court would have said that the order was wrong, and was improvidently awarded, as it did afterwards say, but would have rejected the appeal, because *non constat*, that the parish judge would have continued the order, and thus work an irreparable injury, if properly applied to for a rule to set it aside. And if he had set aside the order, as he was bound to have done, on such an application, how could it have worked an irreparable injury, or an appeal have lain for its prevention, when *non constat* the injury may never have been inflicted at all?

Besides, one of the grounds of the rule for revoking the order, was the want of territorial jurisdiction of the Parish Court over the subject matter. This ground could only have been sustained by evidence *en pais*. An appeal on the order itself, must have excluded that; for the appeal *per se* restrains the court *a quo* from all further action in the case, until the appeal be determined, for it would be an anomaly in the law, if the subordinate and appellate jurisdictions should both be seized of the same case, at the same moment.

But this court could not reverse a judgment, for any thing transpiring after the judgment, yet the rule to set aside the order, is after the judgment; so are all the facts *aliunde* and *en pais*, marshalled in support of the rule. How then can the party have the benefit of the rule in the appellate court, otherwise than by treating the action of the court *a quo* thereupon, as its final judgment of the cause? Until that final judgment was signed, no appeal could be taken. See 1 *Martin, N. S.*, 89. And yet the sale had been made five days before.

4. But the monition law of 1834 is conclusive of the case.

Under its saving provisions M'Donough sought to homologate his sale, and thereby to cure all irregularities which preceded it. He called upon us and all the world, in the very language of the second section, to show any "informality in the order, decree or judgment of the court under which the sale was made." See *article* 1834, *page* 125, *section* 2. We have done so. We show not simply "an

EASTERN DIST.
*March*, 1838.

CANAL BANK
ET AL.
*vs.*
COPELAND.

informality," but the "judgment" reversed for want of juris-diction in the court which awarded it, and the "order" set aside as a mere nullity. · This makes it the imperative duty of this court, not only to sustain the opposition to the homologation of the sale, but in the language of the fifth section of that act, "to annul it."

*Carleton, J.,* delivered the opinion of the court.

In May, 1833, the plaintiffs caused to be sold at public auction, a parcel of land, adjoining the village of Carrollton, containing seven hundred and seventy-seven acres, which were adjudicated to the defendant, the last and highest bidder, for twenty-six thousand dollars, payable in instalments for several successive years.

The purchaser having failed to comply with the terms of the sale, the plaintiffs instituted suit against him in the court for the first district, which, on the 18th March, 1834, rendered in their favor the following judgment :

" In this case, the jury having rendered a verdict for the plaintiffs without damages, and the court considering the said verdict is conformable to law, do order, adjudge and decree as follows : that Robert Copeland, the defendant, do pay the sum of two thousand six hundred and fifty dollars, with legal interest thereon, from the 17th December last, (1833) to the plaintiffs, in the proportions following, to wit : one half of said sum and interest to the New-Orleans Canal and Banking Company ; the other half to the other plaintiffs in the following proportions, to wit : one moiety of said half to Samuel Kohn, one-tenth thereof to John Slidell, and four-tenths to Laurent Millaudon ; and further, that said Copeland do execute his promissory note, satisfactorily endorsed, for the sum of two thousand *six hundred and fifty* dollars, payable on the 1st day of May, 1834, and three other promissory notes, for the sum of seven thousand and sixty-six dollars and sixty-six cents and two-thirds, each payable respectively, in two, three and four years, from the 1st May, 1833, without endorsement, but secured by special mortgage on the property sold ; and that the plaintiffs execute to him

EASTERN DIST.
*March*, 1838.

CANAL BANK
ET AL.
*vs.*
COPELAND.

a bill of sale, on the defendant depositing with the notary, Felix Grima, Esq., successor of G. R. Stringer, the sum of two thousand six hundred and fifty dollars, with interest, at the rate of five per cent. from the 17th December, 1833, up to the time of such tender, and also his promissory notes in the manner aforesaid, of the property adjudicated to him and mentioned in the petition, in the form of the one filed in the suit marked A, dated June 7th, 1833, and that the defendant pay the costs of this suit."

This judgment was affirmed by the Supreme Court, in the May term of the same year, on an appeal taken by the defendant, and on the first of November following, the plaintiffs exhibited it, annexed to their petition, praying for an order of seizure and sale, to the judge of the parish and city of New-Orleans, who, therefore, granted the following order: " Let the within described property be seized and sold according to law, at the following terms, to wit : five thousand three hundred dollars for cash, with legal interest on two thousand six hundred and fifty dollars thereof, from 17th December, 1833, and on two thousand six hundred and fifty dollars, from the first of May, 1834, the balance payable in three equal instalments on the 1st of May, of the years 1835, 1836 and 1837, respectively, without endorsements, but secured by special mortgage," etc.

An ineffectual attempt having been made by the defendant, to set aside this order, on the ground that the property seized was out of the territorial limits of the parish of Orleans, he appealed, and in the June term of 1835, the Supreme Court reversed the judgment of the Parish Court, and set the order aside. 6 *Louisiana Reports, page* 584. 8 *Ibid.*, 577.

But as the appeal was not taken in time to stay execution, the sheriff, in the meanwhile, proceeded under the order, and sold the land at public sale on the 12th January, 1835, when it was bought by John M'Donough, as the last and highest bidder, for nineteen thousand two hundred and fifteen dollars and fifty-five cents. The purchaser, having caused the usual monitions to issue in order to confirm his

Eastern Dist.
*March*, 1838.
───────────
CANAL BANK
ET AL.
*vs.*
COPELAND.

title according to the provisions of the act of March, 1834, the defendant again appeared and made opposition to the homologation of the sale, which being overruled, he appealed, and thus the cause comes for the third time before this court.

Various points have been raised in argument and ably discussed by the counsel on both sides.

But our attention has been mainly drawn to the first ground of opposition taken by the defendant, viz : " The Parish Court has no authority to grant an order of seizure and sale in this case, because the District Court has already taken cognizance of the matter and rendered judgment therein ; because there was no act importing confession of judgment, and because the court has no jurisdiction thereof.

The objection taken when the cause came before us on the first appeal from the Parish Court, was to the want of territorial jurisdiction in that court, the property seized, being, as was alleged, out of the limits of the parish. Now, the validity of the order itself is contested, and we are called upon for the first time, to look into the sources of that power under which the parish judge acted in granting it. This question lies at the bottom of the controversy, and upon its rightful solution the fate of the cause must depend.

It is contended that this power is derived from article 746 of the Code of Practice, which declares, that, "when a creditor has obtained against his debtor, a judgment, having the force of *res judicata,* in a tribunal *different* from that in which he seeks the execution, whether the judgment was rendered in this state or another state of the Union, or in a foreign country ; he may, on this ground, proceed by executory process, and cause to be seized and sold the property of his debtor, without previous citation, in the same manner as on privileged or mortgaged debts, contained in acts importing confession of judgment, except in the cases mentioned in the following article."

To avoid all incongruity, and give a reasonable interpretation to this law, we are bound to infer, that, by a tribunal, *different* from that in which execution is sought, was intended the courts of the parishes and districts, other than that in

which the judgment was rendered; as if it were rendered by a tribunal at Ouachita, the creditor might obtain executory process from the judge of the Parish of Orleans, if the debtor's property were within his jurisdiction, or he might keep the record in his possession, and obtain the order in any other parish of the state wherever he might be so·fortunate as to find the debtor's property. This mode of·procedure might afford greater facilities in the collection of debts, when the situation of the debtor's property was unknown, than the writ of *fieri facias*, for the obtaining of which, recourse must be had, in every instance, to the tribunal that pronounced the judgment.

This construction of article 746, we think, quite clear, when taken in connection with the second section of article 732, which provides that executory process may be resorted to " when the creditor demands the execution of a judgment which has been rendered by a tribunal different from that *within whose jurisdiction* the execution is sought;" that is to say, the tribunal which renders the judgment, and that which executes it, must be of different *territorial* jurisdiction.

But the court of the parish of Orleans, and the court for the first district, are not of different; but of precisely the same jurisdiction, within the parish of Orleans, where the lands were seized : both courts have, moreover, the same jurisdiction, *ratione materiæ*, within that parish, and could not, therefore, under any view of the subject, be said to be different tribunals, with respect to the order of seizure and sale in question.

And we, should come to the same result were we to test this construction of the code by that sound rule of interpretation laid down in article 18 of the Civil Code, which teaches us that " the most universal and effectual way of discovering the true meaning of a law when its expressions are dubious, is by considering the reasons and spirit of it, or the cause which induced the legislature to enact it."

The mind cannot, without difficulty, believe that the legislature intended to impart to a suitor in a cause, the right, capriciously to transfer a judgment from one court, to have

EASTERN DIST.
*March*, 1838,

CANAL BANK
ET AL.
*vs.*
COPELAND.

Where a creditor demands the execution of a judgment, rendered by a tribunal different from that within whose jurisdiction the execution is sought, he may resort to the executory process; but this process cannot issue from a court within the same territorial jurisdiction. The party must resort to his *fieri facias* on his judgment.

So, where a judgment was rendered by the court of the first judicial district, and its execution sought by resorting to the executory process in the Parish Court of New-Orleans: *Held*, that the Parish Court was without power to grant the order of seizure, as *it* and the District Court possessed precisely the same jurisdiction, within the same territorial limits.

EASTERN DIST.
March, 1838.

CANAL BANK
ET AL.
vs.
COPELAND.

it executed in another, holding its sessions in the same parish, in the same city, in contiguous apartments in the same edifice, and of precisely the same jurisdiction over the subject matter in controversy. It would be ascribing to them, conduct without motives, and to charge them with causelessly obstructing the administration of justice, and diverting its streams from their fixed and appropriate channels.

Again, the judgment of the District Court requires the defendant to pay a sum of money, to execute one note with an endorsement, and three others without, and all of them payable at different periods, from the 1st of May, 1833, and to be deposited at the notary's office, when the plaintiffs are to make titles to the property seized and sold.

Without inquiring whether the order of seizure and sale pursued strictly the letter of the judgment of the District Court on which it was based, the Parish Court seems to be charged with the money part of the decree, while a remnant of the judgment remains unsatisfied in the District Court. So that both tribunals are fairly seized of the same judgment at the same time. They may not act in concert in the strange position in which they find themselves. The District Court may, for aught that appears, proceed to execute its own judgment by *fieri facias*, or by *distringas*, while the Parish Court is accomplishing the work with different results, and prescribing duties to the defendant, unlike those defined by the judgment of the District Court : and thus the decrees of courts, intended to settle and establish the rights of the parties, may themselves become sources of new and interminable strife.

Furthermore, by article 746 of the Code of Practice, it is plain, that if the Parish Court had the power *at all* to grant the order, it could have been none other than an ordinary *fieri facias* ; for the law declares, that the creditor, on exhibiting his judgment, may "cause to be seized and sold, the property of his debtor, without previous citation, in the same manner as on privileged or mortgaged debts, contained in acts importing confession of judgment."

A specific order on acts importing confession of judgment, is here used as correllative to the order of seizure on the general property of the debtor : the first flows from the act of the party ; the second is the gift of the law, springing from a judgment obtained in the ordinary course of proceedings, and cannot be limited to specific property, as was done by the parish judge.   In whatever light, therefore, we consider the order, whether as specific instead of general, or as coming from a judge whose territorial jurisdiction forbade the exercise of such a power, we equally conclude, that the order itself is a mere nullity, and all the proceedings arising therefrom, illegal, and without effect.   *Sublato fundamento ruit opus.*

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be avoided and reversed ; that the opposition of the defendant to the homologation of the sale to John M'Donough be sustained ; that said sale be rescinded and set aside, and that the plaintiffs and appellees pay costs in both courts.